UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMED HUSSAIN, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 14-1798 (RMC) |
| DAVID J. SHULKIN, Secretary of Veterans Affairs, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

In 2003, the Department of Veterans Affairs, Washington, D.C., terminated Dr. Mohammed Hussain, a radiation oncologist, because he copied and pasted other physicians' assessments of patient illness into his daily patient reports without evidence that he actually performed the patient assessments personally. Years later, in 2012, the VA Medical Center, St. Louis, Missouri, terminated Dr. Hussain's contract when his supervisor found that he had been copying and pasting other doctors' medical notes in a manner that jeopardized patient health. Dr. Hussain alleges the St. Louis VA Medical Center terminated his contract in retaliation for his equal employment opportunity (EEO) activity related to his 2003 termination.

Two federal district courts have already rejected similar retaliation claims advanced by Dr. Hussain against the VA, holding that his erroneous and confusing recordkeeping provided a legitimate, nondiscriminatory reason for prior adverse actions of which he complained. *See Hussain v. Principi* (*Hussain I*), 344 F. Supp. 2d 86 (D.D.C. 2004) (ESH) *aff'd sub nom. Hussain v. Nicholson* (*Hussain II*), 435 F.3d 359 (D.C. Cir. 2006); *Hussain v.*

1

*Mansfield* (*Hussain III*), No. 8:07-cv-330 (D. Md.). While Dr. Hussain bases his instant complaint on a more current adverse action, the alleged EEO activity is not current, and the legitimate nondiscriminatory reason given by the St. Louis VA Center to terminate his contract repeats itself.

The VA moves for summary judgment under Fed. R. Civ. P. 56 and for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to exhaust administrative remedies. Def.'s Mot. for SJ [Dkt. 54]. Dr. Hussain has opposed, Pl.'s Mem. in Opp'n [Dkt. 55], and the VA has replied, Def.'s Reply [Dkt. 56]. The motion will be granted.

## I. BACKGROUND

Dr. Hussain has previously alleged, in both the D.C. and Maryland federal district courts, that the VA retaliated against him, first by giving him a negative review for generating erroneous and misleading medical records that endangered patients, and then by providing that negative review to other hospitals that requested references from Dr. Hussain's previous affiliations. Both courts rejected claims that these acts were retaliatory. *See Hussain I*, 344 F. Supp. 2d at 106; *Hussain v. Mansfield*, Fed. App'x 419, 420 (4th Cir. Feb. 25, 2010) (per curiam) (quoting *Hussain III*'s oral ruling dismissing claims). These earlier cases form the backdrop to the instant matter.

### A. Dr. Hussain's Prior Lawsuit in the District of Columbia (*Hussain I*)

Dr. Hussain is a Muslim male of Indian descent. Am. Compl. [Dkt. 14] ¶ 4. In 1978, he was hired as the Assistant Chief of Radiation Oncology at the Washington D.C. VA Medical Center. *See* Def.'s Statement of Undisputed Facts [Dkt. 54-2] (Def's Statement) ¶ 1. When the Chief of Radiation Oncology retired in 1997, Dr. Hussain was appointed Acting Chief.

*Hussain I*, 344 F. Supp. 2d at 90. He was the only physician in Radiation Oncology from 1997 until 2001. *Id.*

On September 26, 2000, the Director of the VA Medical Center announced that "Dr. Klemens Barth, then Chief of the Imaging Service, was appointed Chief of the newly created Radiology Service," resulting from the merger of Radiation Oncology and the Imaging Service. *Id.* at 91. As a result, Dr. Hussain reported to Dr. Barth and not the Medical Center's Director. *Id.* On November 29, 2000, Dr. Hussain filed an informal EEO complaint, to the effect that he had not only been denied promotion into Dr. Barth's position but also effectively demoted when the Radiation Oncology department merged into the Radiation Service. Def's Statement ¶ 2. He complained of discrimination based on his race, age, religion, and national origin. *Id*.

Dr. Hussain's performance evaluations suffered in the months after learning that he would not become chief of the new Radiology Service. Of particular concern was "his failure to conduct adequate follow-up with radiation patients," which is considered "essential." *Hussain I*, 344 F. Supp. 2d at 92. As a result, Dr. Hussain's privileges were renewed "with modifications" in June of 2003 for a three-month period instead of the customary two years. *Id.* Pursuant to the modifications, Dr. Hussain was "required to document the results of weekly examinations of his patients and that documentation would be reviewed monthly." *Id.* Upon review in August, a Professional Standards Board completed a Memorandum on Dr. Hussain's work, which found "an alarming pattern . . . that Dr. Hussain finds it appropriate to copy and paste other physicians['] assessment[s] into the electronic patient record without giving evidence that he has actually seen and examined the patient prior to, during, or after treatment." Def. Mem. Ex. 1, 8/22/03 Professional Standards Board Memorandum [Dkt. 54-3] at 3 (ECF

3

numbering). Dr. Hussain had taken extended sick leave in July 2003, prior to the review of his records. When a request for follow-up medical documentation concerning his illness was not returned, the Medical Center placed him on "Absence Without Leave" status. Dr. Hussain retired from the VA in September 2003. *See Hussain I*, 344 F. Supp. 2d at 93.

In November 2003, Dr. Hussain amended his pending Complaint in the D.C. district court, alleging discrimination and retaliation. The district judge granted summary judgment to the VA, noting that its conduct was rooted in "valid and documented concerns regarding [Mr. Hussain's] performance and not in any animus towards his race, religion, or national origin. No reasonable factfinder could conclude otherwise." *Id.* at 103. The D.C. Circuit affirmed summary judgment, *Hussain II*, 436 F.3d at 366. The Supreme Court denied certiorari. *Hussain v. Nicholson*, 549 U.S. 933 (2006).

**B. Dr. Hussain's Prior Lawsuit in the District of Maryland (*Hussain III*)**

Dr. Hussain sued the VA again in the District of Maryland on December 18, 2007. *See Hussain III*, No. 8:07-cv-3370. Dr. Hussain complained that the VA retaliated against him by releasing unfavorable employment information to the Civesta Medical Center in the fall of 2003, whereby Civesta declined to renew his clinical privileges. *See* Def.'s Mem. of Law, Ex. 3, *Mansfield* Complaint [Dkt. 54-3] ¶ 76. He also complained about a negative reference made in 2004 to a doctor at Mercy Medical Center in Baltimore, M.D., which Dr. Hussain alleged caused him to receive a negative review from Mercy and lose his client relationship with Weatherby Locums, his temporary employment agency. *See id.* ¶¶ 62-68. Further, Dr. Hussain alleged retaliation because the VA provided a negative reference to the Frederick Memorial Hospital in the summer of 2006. *Id.* at ¶¶ 19-20.

4

The Maryland District Court rejected these claims and granted summary judgment to the VA. The district judge concluded that

> There's just nothing in the record at all with regard to these particular [timely] claims that suggests anything relative to race, color, national origin or religion, there's just nothing here. Throughout, and this is the overarching decision which goes back to the District of Columbia's District Court and Circuit Court cases, and the Court finds here as well there are legitimate nondiscriminatory reasons for evaluating the plaintiff the way the defendant did.

*See Hussain v. Mansfield*, Fed. App'x at 420 (quoting district court oral ruling). The Fourth Circuit affirmed without oral argument. *Id*.

### C. Dr. Hussain's Current Lawsuit

Now we come to the instant lawsuit, in which Dr. Hussain alleges that the St. Louis VA Center terminated his short-term contract in 2012 due to retaliation against him arising from his EEO activity in 2000. Am. Compl. ¶ 15.

Dr. Hussain joined the St. Louis VA Center on April 16, 2012, as a contract physician hired through a temporary employment agency. *Id.* ¶ 7. His initial contract was for a period of three months. *Id.* Dr. Barbara Sterkel, Chief of the Diagnostic Imaging Services Department, was his supervisor. *Id.* ¶ 9.

Within days of Dr. Hussain's arrival at the St. Louis VA Center, Dr. Sterkel met with him "to let him know that [she] was concerned about the notes that he was putting in, that they were confusing and there was evidence that he was plagiarizing his notes and using notes, that had been written previously, and the dates in his notes when they were actually dates that had occurred in the past." Def.'s Statement ¶ 17. Dr. Hussain did not challenge these observations. Both doctors discussed a blank template from which Dr. Hussain could create

acceptable notes going forward. *Id.* ¶ 18.[1] Dr. Sterkel met with Dr. Hussain again the very next week and again "let him know that there was still evidence that he was cutting and pasting and that his notes were confusing, and that [she] was concerned for the confusion that his recordkeeping would make in the chart, and that [the St. Louis VA Medical Center] would not be able to keep him." *Id.* ¶ 19. The St. Louis VA Center terminated Dr. Hussain's contract on April 24, 2012, eight days after he had started working there. *Id.* ¶ 19.

Dr. Hussain filed an EEO complaint on August 8, 2012, claiming that the St. Louis VA Center violated his EEO rights by terminating his contract due to his national origin, race, religion, age, and in retaliation for his prior EEO Activity. *Id.* ¶ 33. The instant Complaint brings only his retaliation claim to federal court. *See* Am. Compl. Count I. Dr. Hussain advances two aspects to his retaliation claim: first, that Dr. Sterkel terminated his contract due to his previous EEO activity in 2000 and 2006; and second, that in further retaliation for that EEO activity, the D.C. VA Center has provided "unjustified negative references to possible future employers." *Id.* ¶ 24.

Naturally, Dr. Hussain sees the facts from a different perspective, and believes this lawsuit is based on contemporary events. He asserts that Dr. Sterkel had contacted three positive references for Dr. Hussain on March 29, 2012 and he began work in St. Louis on April 16, 2012. Acknowledging that Dr. Sterkel talked to him once about his notes, Dr. Hussain admits that he "agreed there were errors in his notes." Pl.'s Opp'n at 19. He asserts that there were no further discussions regarding his notetaking.

---

[1] There is a disagreement of fact as to whether Dr. Sterkel or Dr. Hussain developed and proposed the template but the point is not material to the disposition of the motion.

Instead, Dr. Hussain states that he approached Dr. Sterkel on April 24, 2012, and requested time off for jury duty. He recalls that Dr. Sterkel "specifically told me, is it the case in Washington, D.C.?" *Id.* at 20. And then, "without warning or notice, Dr. Hussain's employment was terminated at the St. Louis VA." *Id.* He adds, "[t]he medical records establish that doctor [sic] Hussain made errors in his note taking and copied and pasted notes. However, Dr. Hussain was never given a legitimate opportunity and time frame to address these issues to which he admitted there were errors." *Id.*

Dr. Hussain believes that Dr. Sterkel had a negative reference from the D.C. VA Medical Center (dating back to 2011). *Id.* He contends that there is evidence from which a jury could conclude that he was terminated, at least in part, "on negative information she received from the DC VA." *Id.* He further contends that Dr. Sterkel's reference to his "D.C. case" shows the she had actual knowledge of his previous EEO activity in the District of Columbia. He argues that he has shown pretext behind the given reason for his termination from the St. Louis VA Center because: (1) "Dr. Sterkel made only minor efforts to address the note taking issue before terminating Dr. Hussain which proves pretext," *id.* at 21; and (2) "Dr. Sterkel was aware of Dr. Hussiain's [sic] prior EEO activity when she terminated his employment and therefore the termination was a pretext for discrimination," *id.* at 22. In sum, "Dr. Hussain admits he made errors in his note taking but after submitting a template and attempting to correct the issues he was summarily terminated without being given a reasonable opportunity to do so." *Id.* at 29.

## II. LEGAL STANDARDS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. The nonmoving party must point out specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "While summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of his obligation to support his allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Hussain I*, 344 F. Supp. 2d at 94 (quoting *Calhoun v. Johnson*, No. 95-2397, 1998 WL 164780, at *3 (D.D.C. March 31. 1998)).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court laid out a three-part burden-shifting test necessary to establish a claim for retaliation under Title VII: (1) the plaintiff must establish a *prima facie* case demonstrating that he was subjected to an adverse employment action under circumstances that would support an inference of discrimination; (2) the defendant then may offer a legitimate, nondiscriminatory reason for its

8

actions; if so, (3) the plaintiff must demonstrate that these nondiscriminatory reasons were in fact pretextual justifications to hide discrimination. *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003). "Title VII retaliation claims must be proved according to traditional principles, of but-for causation," which obligates the plaintiff to show that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nasser*, 133 S.Ct. 2517, 2533 (2013).

### III. ANALYSIS

Dr. Hussain candidly admits that "[t]he medical records [in St. Louis] establish that doctor [sic] Hussain made errors in his note taking and copied and pasted notes" from other doctors' entries. Def.'s Mem. p. 20. This admission is dispositive: it confirms the legitimate nondiscriminatory reason for the termination of his temporary contract by the St. Louis VA Center, which is identical to the reason already found legitimate and non-discriminatory by three other federal courts.

Dr. Hussain's direct testimony suggests that he misremembers the particulars of his conversation with Dr. Sterkel concerning his jury duty. While Dr. Hussain testified to "a strong belief that during the process of my investigation, they contacted the Washington VA," Am. Compl. Ex. A, EEO Affidavit Testimony of Dr. Mohammed Hussain, Dec. 5, 2010 (Hussain Aff.) [Dkt. 14-1] at 8., he had no admissible evidence to support that fact and Dr. Sterkel testified that she only learned that Dr. Hussain had worked at the VA before his short stint in St. Louis when she received his EEO Complaint. *See* Def.'s Reply Ex. 4, Deposition of Dr. Barbara Sterkel [Dkt. 56-3] at 32. More critical to the immediate issue, Dr. Hussain testified that "when I went to her for permission to participate in the jury duty – and when I explained to her, she start off talking about jury duty, so *I start talking about my time in Washington, D.C.*

9

*She immediately asks that – whether your case is in Washington, D.C., and I told her no.* This is about jury duty." Hussain Aff. at 8 (emphasis added). According to Dr. Hussain's own testimony, it would appear that Dr. Sterkel thought that Dr. Hussain was discussing the District of Columbia because that was where he was to report for jury duty.

The accurate interpretation of the conversation cannot be discerned from the written record. However, even if Dr. Hussain's memory correctly recalls that Dr. Sterkel asked about his "D.C. case," from which he infers knowledge of his prior EEO activity in the District of Columbia, it does not support his EEO allegation. Retaliation must be the "but for" cause of an employer's adverse action; that is, a retaliatory motive cannot be one reason among others. The most one might draw from Dr. Hussain's inference of Dr. Stekel's knowledge (an inference the Defendant opposes) is that Dr. Sterkel may have had two reasons to terminate Dr. Hussain abruptly: he admittedly provided poor patient care and he had, years earlier, engaged in EEO activity at a different VA Center hundreds of miles away. A mixed motive does not support a retaliation claim. *Univ. of Texas Sw. Med. Ctr.*, 133 S. Ct. at 2533.

In addition, the passage of time between Dr. Hussain's EEO activity in the District of Columbia in 2000 (or in Maryland in 2005) is too distant from the termination of his services in St. Louis in 2012 to allow a causal inference. "While the courts have not definitively 'established the maximum time lapse between protected activity and alleged retaliatory actions,' an action which occurs more than three months after the protected activity is not likely to qualify for such a causal inference." *Moore v. Castro*, 192 F. Supp. 3d 18, 44 (D.D.C. 2016) (JDB) (quoting *Brodetski v. Duffey*, 141 F. Supp. 2d 35, 43 (D.D.C. 2001)). Dr. Hussain is correct that no bright-line rule exists as to when an adverse action is too far removed temporally from protected activity to warrant an inference, but the facts presented do not give the Court any

reason to believe any such inference is justified. The events alleged in this lawsuit involve a different supervisor, a different hospital, and occurred years later.

Recognizing these inconvenient facts, Dr. Hussain argues that Dr. Sterkel should have allowed him more time to show improvement in his note taking. Pl.'s Opp'n at 20. However, he identifies no basis for this argument, and the Court can find nothing to suggest that the St. Louis VA Center had an obligation to allow unacceptable patient care to continue for any period. Because Dr. Hussain admits that his notes were improperly cut and pasted, he has admitted that the reasons given for his termination were legitimate and non-discriminatory, paralleling those reasons found legitimate in *Hussain I, II* and *III*. His counsel insists that the St. Louis VA must submit an expert to testify to the standard of care, but the prior litigation between Dr. Hussain and the VA over this same infirmity in his medical practices supports summary judgment without the delay and expense of either experts or trial.

Finally, Dr. Hussain complains about alleged negative references provided by the St. Louis VA Center to non-VA hospitals, identified as Scotland Memorial Hospital in Laurinburg, North Carolina; Albermarle Hospital in Elizabeth City, North Carolina; Dickerson County Health System in Iron Mountain, Michigan; and Rockford Memorial Hospital in Rockford, Illinois. Am. Compl. ¶¶ 19-20. Having failed to file an EEO charge concerning those references, however, he cannot litigate the issues here. Exhaustion of administrative remedies is commonly required in Title VII cases unless there is a basis for failure to do so. *See Rashad v. Wash. Met. Area Trans. Auth.*, 945 F. Supp. 2d 152, 166-67 (D.D.C. 2013); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Dr. Hussain provides no reason for his failure to follow the customary and, for him, well-trod path to the Equal Employment Opportunity Commission. Therefore, the Court will dismiss such complaints.

## IV. CONCLUSION

For the reasons explained above, the Court will dismiss certain of Dr. Hussain's claims for failure to exhaust administrative remedies and grant summary judgment to the VA on the remaining claims. A memorializing order accompanies this memorandum opinion.


Date: August 25, 2017
/s/
ROSEMARY M. COLLYER
United States District Judge